TYDEN v. ROSENBAUM et al.

(Circuit Court, N. D. Illinois. E. D. December 10, 1910.)

No. 28,739.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—LOCKING DEVICE FOR PEDESTAL TABLES.

The Tyden patent, No. 675,577, for a locking device for pedestal tables, although for a combination of old elements, covers an improvement of merit and utility, and discloses patentable invention, although the claims are of narrow scope. Claims 1, 2, 3, 4, 14, 15, and 16 *held* infringed by the device of the Arnold patent, No. 852,011.

In Equity. Suit by Emil Tyden against Sam Rosenbaum and David Birkenstein, copartners as S. Rosenbaum & Co., and John L. Arnold, doing business under the name and style of the Arnold Specialty Company. On final hearing. Decree for complainant.

James Whittemore (Charles S. Burton, Sol., of counsel), for complainant.

Harry Frease, Sol., for defendants.

KOHLSAAT, Circuit Judge. This suit involves claims 1, 2, 3, 4, 14, 15, and 16, of patent No. 675,577, granted to complainant June 4, 1901, for improvements in locking devices for pedestal tables, which read as follows, viz.:

"1. In a pedestal extension-table, in combination with a vertically-divided pedestal and the two separable parts of the table-top attached to the respective parts of the pedestal, means for binding the pedestal parts together, comprising an element on each part at a substantial distance below the top of the pedestal, and means whereby they are adapted to be connected when the pedestal parts approach; means for operating on said elements after they are connected to cause them to bind the pedestal parts together, extending from said elements upward and thence under the table-top toward the margin thereof.

"2. In a pedestal extension-table, in combination with a vertically-divided pedestal, the two separable parts of the table-top rigid with the parts of the pedestal respectively; a locking device for connecting the two parts of the pedestal together, comprising two mutually-engaging elements, one on each part of the divided pedestal, said elements being adapted to become engaged before the pedestal parts are fully closed together; one of said locking elements being movable on the part of the pedestal to which it pertains, and operating connections by which it may be moved in direction to draw the parts of the pedestal together.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

"3. In a pedestal extension-table, in combination with a vertically-divided pedestal, the two separable parts of the table-top rigid with the parts respectively of the pedestal; a locking device for connecting the two parts of the pedestal together, comprising two mutually-engaging elements, one on each part of the divided pedestal; a lever connected to one of said elements, and adapted to be operated to draw the parts of the divided pedestal together.

"4. In a pedestal extension-table, in combination with a vertically-divided pedestal, the two separable parts of the table-top rigid with the parts respectively of the pedestal; a locking device for connecting the two parts of the pedestal together, comprising two mutually-engaging elements, one on each part of the divided pedestal, said elements being adapted to become engaged before the pedestal parts are fully closed together; operating connections from one of said elements, adapted to move it to draw the parts of the pedestal together after their said parts are engaged; and means for locking the element thus moved at the position at which the pedestal parts are closed together."

"14. In a pedestal extension-table, in combination with a vertically-divided pedestal and the two separable parts of the table-top attached to the respective parts of the pedestal, means for securing the two parts of the pedestal together, comprising elements on the respective parts of the pedestal at a substantial distance below the upper end of the pedestal adapted to be connected, and connections for operating on said elements to close up the pedestal parts, such connections extending upwardly from the points of operation on the elements and thence under the table toward the edge thereof.

"15. In a pedestal extension-table, means for uniting the two separable parts, comprising two co-operating elements, one on each part of the pedestal, at a substantial distance below the upper end thereof, adapted to be connected when the pedestal parts approach; and means on one of said parts for moving the element on that part after they are connected, to draw and bind the pedestal parts tightly together.

"16. In a pedestal extension-table, a hollow pedestal comprising two separable parts, one on each of the separable parts of the table; means for uniting the two separable parts, comprising two co-operating elements, one mounted on each part of the hollow pedestal within the cavity thereof, at a substantial distance below the upper end of the pedestal, adapted to be connected when the pedestal parts approach; means mounted on one of said pedestal parts within the cavity thereof for moving the element on that part after the elements are connected to draw and bind the pedestal parts tightly together, extending up within the cavity of the pedestal and thence under the table-top horizontally toward the margin of the table."

The gist of the invention consists in a device whereby the sections of a table pedestal can be drawn up closely together, more particularly at the bottom, after they are brought into contact with each other, and held firmly in place by means of an actuating mechanism extending upward to the top of the table within the pedestal, and operated from just under the table top, thus doing away with the necessity of stooping down under the table and manually tightening the parts by means of sash or other drawing and holding devices.

The Circuit Court of Appeals for the Sixth Circuit in Tyden v. Ohio Table Co., 152 Fed. 183, 81 C. C. A. 425, held claim 1 void as "too broad and substantially for a function," and then held the other claims valid, but of "narrower scope and limited to the specific device shown." No reason is perceived why claim 1 should not be read in the light of the drawings and specification. So read, it would be limited by the latter and necessarily entitled to only a narrow construction, and perhaps be deemed a substantial duplication of some one of the other claims. I do not deem it important to deal with it

specifically on this hearing. It appears from the record that, by reason of a tendency to sag at the center, it has been difficult to obtain a close contact of the pedestal parts at their base. Pushing the two table-top sections together carried the rigidly attached pedestal sections together at their upper ends, but left their base more or less open. To remedy this, it was deemed necessary to get under the table and manually draw the sections together at their base by means of cam, lever, or other drawing devices.

The Briggs patent of September 1, 1843, numbered 3,249, and Thorn patent, No. 7,997, granted March 25, 1851, are fairly representative of the prior art. The former locks the parts at their top, and makes no attempt to bring them in close locked contact at the base. The latter is not a true pedestal, but discloses two center legs and two or three pedestals inclosing them. The locking device is a substantial distance below the table top, but lacks any drawing or other contracting or tightening means following the contacting of the pedestal halves. It is this that constitutes the distinguishing feature of the patent in suit. The elements employed are very old. The prior art covers the bringing of the two parts into locked contact with each other and leaves them there. Tyden brings the locking parts into contact, and then adds the drawing influence, whereby there is produced a drawing of the parts of the pedestal close together, all through the operation of the lever just under the table top. The record makes a strong case of public approval. That the utility of the Tyden contribution to the art was considerable is evidenced by the avidity with which his device was adopted by the trade. Nor can its utility be gainsaid by defendant. Taking the whole locking device together, it is apparent that its application to table pedestals was new, as was also the table pedestal so arranged. So far as the record shows, a new result was obtained in that art. Considering all the facts in evidence, I am of the opinion that the claims are valid, though narrow.

The uncertainty alleged by defendant to be disclosed in them as to the location of the locking devices "at a considerable distance below the top of the table" is more seeming than real. The specification sets out the fact that this requirement is for the purpose of affording the necessary leverage for forcing the pedestal parts together. Manifestly no one point or location should be named. The general principles governing the means for giving efficiency to a lever are well known, and need not be more specifically stated. Nor is it of consequence that the claims in suit do not call for a releasing device. What is called for is complete in itself.

Defendant claims to be operating substantially under patent No. 852,-011, granted to J. L. Arnold April 30, 1907. In the above-named cause before the Circuit Court of Appeals for the Sixth Circuit, it was held that the defendant, who was operating under patents No. 772,019 and 778,471, granted to J. F. Arnold in 1904, did not infringe. The device now in suit is to all intents and purposes the same as that of Tyden. The principle is the same, and the only difference consists in the substitution of one well-known form of lever for another. The Tyden claims can be read upon the Arnold device. To construe Tyden so narrowly as to exclude the Arnold arrangement of elements is to

destroy its value entirely—a result which under the circumstances in evidence does not commend itself to the mind of the court.

Tyden was the first to effect the complete closing of the pedestal sections by the movement of a lever. The table constructed under his patent held the market for several years and became an extensive feature in the table market. This is not conclusive evidence of invention, but it is very persuasive. It is difficult to conceive of any valid invention, however narrow, which would contain so many elements of self-destruction as Tyden's would, were defendant's construction thereof to prevail.

The relief prayed for is granted.